FILED
SUPERIOR COURT
OF GUAM

2018 APR 24 AM 10: 52

CLERK OF COURT

BY: _____

**IN THE SUPERIOR COURT**
**OF GUAM**

DIEGO MENDIOLA, IN HIS CAPACITY AS )
SPECIAL ADMINISTRATOR OF THE )
ESTATE OF RADHI P. HEMLANI and )
ISHWAR P. HEMLANI and VASUDEV B. )
HEMLANI, EXECUTORS OF THE ESTATE )
OF P.D. HEMALNI, )
                                   )
                 Plaintiffs, )
                                   )
        vs. )
                                   )
RK INCORPORATION, )
                                   )
                 Defendant )

Civil Case No. CV0525-11

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**

## INTRODUCTION

This matter came before the Honorable Michael J. Bordallo for a bench trial on September 15, 2017. Attorney William Fitzgerald represents Plaintiffs Diego Mendiola, in his capacity as Special Administrator of the Estate of Radhi P. Hemlani and Ishwar P. Hemlani, and Vasudev B. Hemlani, Executors of the Estate of P.D. Hemalni. Attorney Thomas Tarpley, Jr. represents Defendant RK Incorporation. After considering the evidence presented at trial, the record, and applicable law, the Court issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following Findings of Fact.

1. Defendant RK Incorporation ("RK") is a small family-owned company. Kishore Hemlani ("Kishore") owns the corporation with his wife and daughter as shareholders.

2. P.D. Hemlani ("P.D.") was a Guam businessman and family member of Kishore. P.D. died in 2004.

3. From September 25, 2006 to September 27, 2006, the Estate of P.D. Hemlani published a Notice to Creditors in a Guam newspaper of general circulation. RK was present in Guam, had notice and knowledge of the probate matter, and did not make a claim against P.D.'s Estate in PR0074-04.

4. Radhi Hemlani ("Radhi") was the wife of P.D. and served as the executrix of his estate until her death on August 18, 2013.

5. Don Hemlani ("Don") is P.D.'s grandnephew and has substituted as co-executor of P.D.'s estate.

6. In October 1997, P.D. extended a loan of $600,000 to RK. There is no written record of this loan.

7. Through a series of check and cash payments, RK paid $333,000 to P.D. by October 1998.

8. RK continued making payments. By September 18, 2002, RK paid to P.D. $830,261.01 in checks and cash. RK paid $685,461.01 in check, and $144,800.00 in cash.[1]

9. The parties do not dispute whether the checks admitted into evidence were made.

10. After considering the testimony of Kishore Hemlani and reviewing the history of payments made by check and cash, the Court finds that it is more probable than not that RK made the cash payments he testified to and provided in his summary. The history of undisputed check payments demonstrates that RK made monthly payments to P.D. In 1998, however, RK only made two payments by check, one in January and one in April. RK represents that the payments for the remaining ten months in 1998 were made by cash. Additionally, the cash payments in 1998 are similar in amount and frequency to those made by check in 1999. The Court finds that it is more probable than not that these cash payments were made.

11. With respect to the $54,000 cash payments in 1997, the $23,300 cash payments in 2001, and the $10,000 cash payment in 2002, the testimony presented at trial supports the Court's finding that it is more probable than not that these payments were also made by RK to P.D.

12. On September 18, 2002, RK, through its Vice President Romi Hemlani, signed a promissory note promising to pay $120,000 to P.D. at 18% interest per annum by September 20, 2003.

13. The parties concede that the $120,000 promissory note was meant to reflect the remaining balance on the 1997 $600,000 loan per P.D.'s calculations. It is undisputed that the promissory note concerns only the $600,000 loan. Further, there is no evidence that the promissory note at issue was for a loan separate from the $600,000 loan extended in October 1997.

---

[1] Of the $144,800.00 cash payments, $2,000.00 was made through traveler's checks.

14. The parties agree that sometime after September 18, 2002, P.D. agreed to extend the term of the loan and to reduce the interest rate to 12 % per annum.

15. From October 2002 to October 2007, RK made sixty (60) payments of $1,200 totaling $72,000 to P.D. and Radhi after P.D.'s death.

16. RK's last payment was made on October 1, 2007.

## CONCLUSIONS OF LAW

Based on the preceding Findings of Fact, the Court makes the following Conclusions of Law.

### Promissory Note

The Supreme Court of Guam has provided a four-prong test to guide courts in actions stemming from a promissory note. In order to recover on a promissory note "the holder or payee [must] establish that (1) there is a note; (2) he is the legal owner and holder of the note; (3) the defendant is the maker of the note; and (4) a certain balance is due and owing on the note." Hemlani v. Hemlani, 2015 Guam 16 ¶ 14 (citing Blankenship v. Robins, 899 S.W.2d 236, 238 (Tex. App. 1994)). The parties agree that the first three elements of the test are satisfied. The September 18, 2002 promissory note was admitted into evidence. Additionally, P.D., and now his estate, is the legal owner and holder of the note. Further, RK admitted at trial that RK's Vice President signed the note in 2002. The only factor in dispute is the final factor – whether a certain balance is due and owing on the note.

Plaintiffs assert that the promissory note was not fully paid when RK stopped making payments in October 2007. Thus, because there was still a balance in 2007, Plaintiffs argue that RK's obligation has increased significantly. Further, Plaintiffs contend that the note was

never forgiven or returned to RK. In contrast, RK argues that the company overpaid the loan. With respect to the $120,000 amount on the promissory loan, the parties agree that the amount was derived from P.D.'s personal calculations. Thus, in considering whether a balance is due and owing on the promissory note, the Court conducted its own calculations based on the payments the Court finds were made by RK to P.D.

## Simple Interest

All parties concede that P.D. extended a loan to RK in October 1997. The amount of the loan was $600,000. There is no written record of this loan or its terms.

> Interest will be compounded where from the context of the instrument it appears that the parties so intend, and otherwise it will not be compounded. A promissory note that authorizes the accrual of interest upon any principal and accrued interest owing at the time the note reaches maturity cannot be construed as authorizing the compounding of interest thereafter. A provision for interest at a certain rate "per annum" does not mean that the interest must be compounded.

10 C.J.S. *Interest* § 103 (2018). After considering the testimony of Kishore Hemlani and the evidentiary exhibits detailing the payments he made to P.D. and Radhi, the Court finds that the original $600,000 loan did not contemplate a compound interest provision. Further, the Court has not been presented with an express provision for compound interest. [2] Accordingly, the Court applied simple interest at the end of each year in calculating the balance on the loan.

## Balance as of September 18, 2002

The parties agree that RK made payments to P.D. beginning in October 1997. On September 18, 2002, RK signed a promissory note to pay $120,000 to P.D. The parties

---

[2] Additionally, the Court finds that applying compound interest to this family loan is unreasonable. In the first year of loan, RK paid to P.D. $333,000. The Court finds that applying the 18% interest on the entire $600,000 initial balance after the debtor paid over half that amount to be unreasonable and not intended by the parties. Instead, the Court finds that applying the 18% per annum to the balance at the time of payment is appropriate. Further, the Court finds that assessing interest at the beginning of the year or before any payments are made is only appropriate if the parties expressly agreed to the practice in writing. See Lustgarten v. First Federal Sav. & Loan Ass'n of Chicago, 191 N.E.2d 434, 435-37 (Ill. Ct. App. 1963).

concede that $120,000 was the balance of the $600,000 loan derived from P.D.'s calculations. Further, there was no evidence that the $120,000 note was for a separate loan extended by P.D. to RK. This promissory note is the basis for Plaintiffs' Complaint and Defendant's counterclaims.

Taking into account RK's check and cash payments and applying simple interest of eighteen percent (18%) per annum, the Court determines that on September 18, 2002, RK had a negative balance of $138,912.01.[3] Thus, the Court concludes that the $120,000 balance calculated by P.D. was erroneous. The Court finds that RK fulfilled its obligation to P.D. for the $600,000 loan extended in October 1997 and that there was no balance on the loan at the time the promissory note was signed in September 2002. Further, because the Court finds that there was no balance on the promissory note, the Court holds that there was no amount due or owing on the note on the date it was made. Accordingly, the Court concludes that the final element of the four-factor test is not satisfied. Consequently, Plaintiffs are not entitled to recover on the September 18, 2002 promissory note.

Further, because the Court finds that there was no balance due on the promissory note, the Court need not address whether the alleged oral modification of the interest rate applies retroactively or only prospectively.

**Overpayment Claim**

RK argues that in addition to paying back the $600,000 loan with interest, the company made significant overpayments on the loan. In its Amended Answer and Counterclaim, RK asserts that Plaintiffs owe RK the amount of the overpayments plus interest. This claim is

---

[3] The Court also applied the 18% per annum interest rate on a quarterly basis (4.5% per quarter) and found that on September 18, 2002, RK had a negative balance of $37,103.62.

made against the Estate of P.D. Hemlani. Under Guam law, claims against an estate that arise out of a contract must be filed within sixty calendar days after the first publication of a notice to creditors in a daily newspaper of general circulation. 15 G.C.A. § 2521(a), 2503(a). "Any such claim not so filed or presented is barred forever, unless it is made to appear by the affidavit of the claimant to the satisfaction of the Superior Court that the claimant had not received notice, by reason of being physically absent from the territory of Guam..." 15 G.C.A. § 2521.

In this case, it is undisputed that RK was present in Guam and had knowledge of the probate proceedings concerning the Estate of P.D. Hemlani. RK did not file a claim against the Estate within the time frame prescribed by law. Thus, the Court concludes that RK's claim for overpayment is barred.

**Return of Promissory Note and Mortgage**

RK also argues that it is entitled to the return of the promissory note and the mortgage signed to P.D. to secure the promissory note because RK paid back the loan. Because the Court finds that RK fulfilled its obligation to P.D., the Court finds that RK is entitled to the return of the promissory note and the mortgage.

\\

\\

\\

**CONCLUSION AND ORDER**

Page 7 of 8

For the reasons set forth above, the Court concludes that Defendant RK Incorporation paid back the $600,000 loan extended by P.D. Hemlani in October 1997. The Court further concludes that the September 18, 2002 promissory note was based on erroneous calculations and that there was no balance due or owing on the date the promissory note was signed. Accordingly, the Court concludes that Plaintiffs are not entitled to relief on the promissory note. Finally, the Court concludes that RK Incorporation is entitled to the return of the promissory note and the mortgage signed to secure the promissory notes. Thus, the Court orders Plaintiffs to return the promissory note and mortgage to RK Incorporation.

Additionally, the Court orders Defendant RK Corporation to prepare the judgment consistent with the Court's Findings of Fact and Conclusions of Law and submit it upon Plaintiffs' approval as to form.

SO ORDERED, this _24_ day of _April_ 2018.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam


SERVICE VIA COURT ...
I acknowledge that a cop of the
original her o was placed in the
court box
FITZGERALD
TAR PUZY
4/2 18
Deputy Cle... Court of ...